18238

AMERICAN CASUALTY COMPANY, Appellant, v. NIAGARA FIRE INSURANCE COMPANY and Julia A. Pearson, as Administratrix of the Estate of William Pearson, Respondents, and Myra Register and Mrs. Margaret Register, Appellants.

(137 S. E. (2d) 412)

*Messrs. Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Appellant, American Casualty Company,* and *Isadore E. Lourie,* of Columbia, and *Edward E. Saleeby,* of Hartsville, *for Appellants, Myra Register* and *Mrs. Margaret Register,*

*Messrs. deLoach & deLoach,* of Camden, *for Respondent, Niagara Fire Insurance Company,*

July 8, 1964.

LEWIS, Justice.

This action for declaratory judgment was brought by the plaintiff, American Casualty Insurance Company of Reading, Pennsylvania, against the defendants, Niagara Fire Insurance Company, Mrs. Margaret Register, and others, for the purpose of determining whether or not the defendant Niagara Fire Insurance Company provided on April 27, 1961, liability insurance coverage on a 1958 Plymouth automobile owned by the defendant, Mrs. Margaret Register. From a judgment of the lower court holding that Niagara provided no insurance coverage on the Plymouth automobile of Mrs. Register on the above date, American Casualty Insurance Company and Mrs. Register have appealed.

The Plymouth automobile owned by the defendant, Mrs. Margaret Register, was involved on April 27, 1961, in a collision with an automobile operated by one William Pearson. Pearson received injuries in that collision from which he died. Subsequently, a claim was asserted by the administratrix of the estate of William Pearson against Mrs. Register for his alleged wrongful death. Mrs. Register claimed that liability insurance coverage on her Plymouth automobile was provided under a policy issued by the defendant, Niagara Fire Insurance Company; but Niagara denied that it had in force a policy covering the Register automobile, claiming that, while it had previously issued such a policy, the policy had terminated prior to April 27, 1961, the date of the collision in which William Pearson received

his fatal injuries. The plaintiff, American Casualty Insurance Company, had in force a policy of liability insurance covering the automobile in which the deceased, William Pearson, was riding. This policy contained an uninsured motorist endorsement as required by the statutes of this State. Act No. 312 of the 1963 Acts of the General Assembly (now appearing as Sections 46-750.31 *et seq.* in the 1963 Supplement to the 1962 Code of Laws). Therefore, if Mrs. Register had no automobile liability insurance policy in force at the time of the collision, her automobile was an uninsured motor vehicle and coverage for any liability for the wrongful death of Pearson would fall on American Casualty under the uninsured motorist endorsement in its policy.

When Niagara denied that it provided liability coverage on the Register automobile, the administratrix of Pearson's estate made claim against American Casualty under the above mentioned uninsured motorist endorsement. After claim was made against American Casualty, this action was instituted by it for an adjudication as to whether Niagara provided liability insurance coverage on the Register automobile on April 27, 1961, the date of the loss. All issues were referred by agreement to the Master for Kershaw County, who filed a report in which he held that Niagara provided such coverage. Upon exceptions being filed thereto, the Circuit Court reversed the report of the Master and held that, while Niagara had previously issued a policy of liability insurance to Mrs. Register, the policy had terminated before the loss and was of no binding effect at that time. The sole issue in this appeal is whether the lower court erred in so holding.

In March 1959, Mrs. Margaret Register contacted Mr. James Cannon, a partner in the Cannon Insurance Agency of Hartsville, South Carolina, for the purpose of obtaining a liability insurance policy on her 1958 Plymouth automobile. Being unable to procure the desired coverage in any of the companies represented by Cannon, application,

showing Cannon as the producer of record, was made by Mrs. Register for a policy through the South Carolina Assigned Risk Plan. The risk was assigned to the Niagara Fire Insurance Company which thereafter issued its policy to Mrs. Register, effective from March 25, 1959 to March 25, 1960. This policy was subsequently renewed for an additional one year period from March 25, 1960 to March 25, 1961.

In September 1960, Mrs. Register purchased another automobile, a 1955 Chevrolet, and Cannon was asked by Mrs. Register to procure liability insurance on this vehicle. Subsequently, after being contacted by Cannon, Niagara issued an endorsement adding the Chevrolet to the policy previously issued, thus providing coverage in the same policy on both the Plymouth and Chevrolet automobiles owned by Mrs. Register.

On January 9, 1961, Mrs. Register notified Cannon that she had sold the Chevrolet automobile, wished to cancel the insurance on it, and obtain a refund on the unearned premium. Cannon thereupon instructed his secretary to write to Niagara requesting cancellation of coverage on the Chevrolet. The letter, as written by the secretary, instead of only requesting cancellation of the policy as to the Chevrolet, informed Niagara that Mrs. Register "has sold her car and wishes for you to cancel her policy effective date of this letter. Please send refund as soon as possible." Niagara wrote to Cannon on January 17, 1961, in reply to the above letter, as follows:

"Thank you for your letter, concerning the cancellation of the above mentioned policy.

"It is against the company rules to cancel automobile liability insurance, without having the policy.

"Please return the policy, or have the enclosed Release signed. The return premium will be mailed to your office."

Upon receipt of the above letter at the offices of Cannon Insurance Agency, someone in that office signed the name

of Mrs. Register to the release under date of January 18, 1961, and returned it to the company. Mrs. Register did not sign the instrument, nor did she have any knowledge of its execution. The foregoing release was, in form, a complete discharge of Niagara from all liability under the policy issued to Mrs. Register. In other words, instead of the instrument being a cancellation of the coverage of the Chevrolet, which had been sold, it was also a cancellation of the policy as to the Plymouth automobile which Mrs. Register still owned and over which she desired to maintain the coverage. Upon receipt of the release, Niagara entered upon its records a cancellation of the policy as of January 18, 1961. Cannon did not recall the transaction involving the release and was unaware that the entire policy had been cancelled.

No refund of premium was made by Niagara until March 28, 1961, three days after the normal expiration date of the policy and two months and ten days after it had been cancelled by Niagara under the foregoing circumstances. On that date, the company wrote to Cannon enclosing a check for the unearned premium on the entire policy from January 18, 1961, the date of the purported cancellation. Upon receipt of the letter and the refund, Cannon realized for the first time that Mrs. Register's policy had been mistakenly cancelled as to her Plymouth automobile. On the same day that the refund check was received, March 29, 1961, Cannon wrote to Niagara advising it that a mistake had been made. The refund check was returned in the same letter with a request that the policy be renewed, the refund check applied to a renewal of the policy on the Plymouth, and Mrs. Register sent a statement for the balance of the renewal premium. This letter was as follows:

"I feel that a mistake has been made on this policy on 1-9-61, the insured called and said she had sold her 1955 Chevrolet covered on this policy and would like to remove it from the policy. She kept the 1958 Plymouth and still wanted coverage on this.

"During the time between 1-9-61 and 3-17-61 we did not hear from you on this so we wrote again about it on 3-17-61.

"Evidently you thought that she wanted to cancel coverage on the Plymouth also so no renewal notice was sent.

"Mrs. Register still has the 1958 Plymouth and would like to keep coverage on it.

"We are returning your refund check so that you can apply it on her renewal and then send her a statement for the balance."

Having received no reply to the above letter, Cannon wrote to the company on April 26, 1961, requesting an answer. The collision, in which the Register automobile was involved, occurred on April 27, 1961. Cannon learned of the accident on May 1, 1961, and notified the claim office of Niagara in Columbia, South Carolina, on that date. On May 2, 1961, after notice of the loss and thirty-four days after the request for renewal, Niagara returned the refund check to Cannon with a letter refusing to renew the policy.

While the lower court and the parties have dealt at length with the testimony relating to other features of the case, we think that a determination of the issues in this appeal turns upon the foregoing undisputed facts.

Niagara contends that Mrs. Register's policy was effectively cancelled on January 18, 1961, as a result of the execution of the above mentioned release, and that it was under no obligation to thereafter renew it. The lower court so held. Mrs. Register, the insured, contends, on the other hand, that the cancellation of coverage on her Plymouth was without her authorization and ineffective, and that Niagara was estopped under all of the circumstances to deny coverage on her car at the time of the loss. Whether or not Niagara was so estopped is, under our view of the matter, the basic issue in this appeal. However, since it affects the question of renewal, the issue of whether the policy was effectively cancelled, will be first determined.

The lower court held that the policy was properly cancelled on the basis of the execution of the foregoing release. Although the release was not signed by Mrs. Register, the lower court held that the Cannon Insurance Agency was acting as her agent in the matter and that she was bound by the acts of Cannon, which brought about the complete cancellation of her policy, including coverage on her Plymouth. We disagree. Under the undisputed facts, Cannon had no authority to procure the cancellation of the policy on Mrs. Register's Plymouth automobile.

Cannon was the agent of Mrs. Register to procure her automobile liability insurance, but such fact gave him no authority to cancel it. An agent to procure insurance is without authority to cancel it, unless that authority is clearly conferred. 6 Appleman, Insurance Law and Practice, Section 4224.

At no time did Mrs. Register authorize Cannon or anyone else to cancel the liability insurance coverage on her Plymouth automobile. It is true that she authorized Cannon to procure the cancellation of the coverage on the Chevrolet, which had been sold, but this did not alone, either expressly or by implication, authorize him to procure the cancellation of insurance on her Plymouth.

However, Niagara did not consider that Cannon had the authority to effect a cancellation of the policy and did not rely upon him as Mrs. Register's agent in that regard. Upon receiving Cannon's letter of January 9, 1961, advising that Mrs. Register wished her policy cancelled as of that date, Niagara, instead of relying upon Cannon's letter to cancel, wrote to Cannon on January 17, 1961, informing him that, in order to effect the cancellation, the policy would have to be returned or Mrs. Register would have to sign a release. Niagara clearly did not rely upon Cannon as Mrs. Register's agent to cancel the policy. Instead, it relied solely upon the release purportedly signed by Mrs. Register. She did not sign it, nor authorize it to

be signed, and was not bound by the unauthorized signature of her name thereto. Therefore, the cancellation of coverage on the Plymouth on January 18, 1961, was ineffective and the policy remained in force according to its terms until March 25, 1961.

The policy in question was issued for the term from March 25, 1960 to March 25, 1961. The loss which gave rise to this controversy occurred on April 27, 1961, approximately thirty-three days after the foregoing date. It is conceded that a renewal policy was not actually issued. Niagara, therefore, would not be liable unless, as Mrs. Register contends, it is estopped under the circumstances to deny coverage.

As heretofore pointed out, the policy in question was issued under the South Carolina Assigned Risk Plan. The Assigned Risk Plan was authorized under Section 46-719 of the 1962 Code of Laws, which is a part of the Motor Vehicle Safety Responsibility Act. This section provides that the Chief Insurance Commissioner, after consultation with the affected insurance companies, shall approve a reasonable plan for the equitable apportionment among such companies of applicants for automobile liability policies who are in good faith entitled to such policies but are unable to procure them through ordinary methods. The Insurance Commissioner approved such a plan and established rules and regulations governing the same, which admittedly are binding on all insurance companies participating therein. A copy of these regulations was made a part of the record in this case. Pertinent here, these rules provide that renewal premiums on policies issued under the foregoing plan shall be paid at least 15 days prior to the renewal date. They further provide that the insurer shall give to the insured a notice of the renewal of such policies and the premiums due at least 45 days prior to the date of such renewal.

Mrs. Register's policy was an assigned risk policy, and it is conceded that, if she had paid the renewal premium

at least 15 days prior to the renewal date, Niagara would have under the rules governing such plan issued to her a renewal policy. It is further conceded that under such plan, but for the cancellation of the policy, Niagara would have been required to give to the insured a notice of the renewal and the amount of the premium due at least 45 days prior to the date of such renewal. The unauthorized cancellation of her policy deprived the insured of the 45 day notice and the opportunity to timely renew the policy. Niagara had knowledge of such facts when it received the letter of March 29, 1961, requesting a renewal.

It is contended that Mrs. Register knew that her policy expired on March 25, 1961, and should have taken steps to secure other insurance. This is not conclusive of her rights. Such fact, if not true, must be weighed in the light of the reasonableness of her reliance upon Niagara to correct the mistake that had been made and renew her policy.

The fact that only a part of the renewal premium was sent to Niagara with the request to renew the policy is of no controlling significance in this case. The company did not refuse to renew the policy on this ground, but stated in its letter of May 2, 1961, that the check was being returned because the policy had been previously cancelled and "the expiration date of this policy has already passed." At no time did any representative of Niagara contend on the trial of the case that the renewal was rejected because only a partial payment of the premium was tendered. The position was simply taken that the policy had been properly cancelled, the expiration date had passed, and the company was under no obligation to Mrs. Register.

The risk involved was within the period for which it had been assigned to the company. Under normal procedure, the company was allowed only two working days to act upon an application under the Assigned Risk Plan. It was, therefore, charged with notice of the importance of taking prompt action in dealing with assigned risks. Especially is this

true in the case where it appears that the company was given notice that an insured's policy had been previously cancelled through mistake and, but for such mistake, timely renewal would have been made. It is also true that an earlier return by the company of the unearned premium would have brought to the attention of the insured, as it did when later received, notice of the unauthorized cancellation of her policy. This delay of two months and ten days helped set the stage for the failure of the insured to timely renew her policy. Fair dealing required that the company give reasonable notice under the circumstances to the insured, either of its acceptance or rejection of the request for renewal. Such was not done in this case.

As stated in *Palmer v. Sovereign Camp, W. O. W.*, 197 S. C. 379, 15 S. E. (2d) 665: "The principle of estoppel in equity stands upon the very foundations of right and fair dealing. It considers and weighs the conduct of men in their dealings with each other, and gives that effect and meaning to their actions which common sense and justice dictate." The fact that the policy in question was issued under the Assigned Risk Plan does not remove the insurer from the application of the foregoing principles.

Under the undisputed facts in this case, we conclude that Niagara was estopped to deny liability coverage on the Plymouth automobile of Mrs. Register on April 27, 1961, the date of the loss. Such is the only reasonable inference to be drawn from the testimony, and the lower court should have so held.

Reversed and remanded for the entry of judgment in accordance with the foregoing conclusions.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.